Good morning, Your Honors. Thomas Porte, appearing for the appellant, Michael Sylver. Your Honors, we bring this appeal on our belief that Mr. Sylver was denied his constitutionally errors that we believe were made by the trial court. In the first instance, it's our view that the court erred in allowing the commission to introduce into evidence testimony from Ms. Romero, who was a SEC auditor and professional accountant and analyst for the SEC who had participated in the original investigative proceedings. involving the Amazon Natural Treasures Corporation, of which my client had been the head. There had been no declaration of any intent to call an expert witness at the trial, and Mr. Sylver did not have any expert to protect his interests. Was she a recipient witness also? You say was Ms. Romero a recipient witness? She was testifying. I suppose she was a recipient witness of her investigation of records in that respect. Yes, that would be correct, I believe. However, it's our view that she testified well beyond either the recipient witness status or that of a so-called summary witness, which is the justification that was employed to get her testimony into evidence. What she did was to distill, in the words of the commission's counsel, from various records, a series of totals, which she claimed were given to Sylver, which went to Sylver or were disbursed to Mr. Sylver. In our view, that constituted a conclusion of an expert auditor, which was obviously highly damaging to the defense. Only an expert would be able to make that kind of conclusion. The testimony was not simply a matter of totaling sums to benefit the trier of fact, but was basically to say that Mr. Sylver actually received certain monies. The importance of that to the case was, of course, that there was an award of $120,000 in disgorgements, or I should say $320,000 in disgorgements against Mr. Sylver, which we heard previously today, these are not intended to be punitive. These are supposed to be simply restitution of monies actually received. It was our contention that there was no valid evidence Mr. Sylver ever received any such funds. And so had we known there was going to be an expert reaching that sort of conclusion, we would have been able to have an expert testify to contrary evidence, that is to say that there was not sufficient funds available in the corporation for that money to have been unaccounted for. The court went to valid disbursements and operations of the company throughout that time period, and Mr. Sylver never actually received those funds. But the trial judge made the statement that, well, you can cross-examine this witness counsel as to what items are there, and that is true, but the ability to cross-examine an expert is one thing. That's not the same as having your own expert to counter that expert, and that's, I would submit, the reason why it's required that there be notice if an expert is going to be called as a witness at trial. Did you ask for a continuance? We did ask for a continuance, and the judge gave us, I think, one day to look over the exhibit which had been prepared and submitted to us only a couple days before trial, which was the totals that Ms. Romero testified went to Sylver or were disbursed to Sylver, but that did not provide us ample time. And most of these may be monies that were not properly accounted for, may not have been properly received the way they should have been, perhaps, but that's one thing to say that and another to say that Mr. Sylver received these monies to the extent that he should have to disgorge them as being ill-gotten gains. And so you asked for a continuance. Did you ask for a specific amount of time? We asked for, I think, to put the whole case over. The judge said no. I think he finally did give us a day of time. As I recall, we came back, I think, the next day, and I did attempt to go through the items as best we could. And then, of course, because that kind of testimony had been made, then we were forced to put Mr. Sylver on and attempt then to try to explain how these totals had been done. But the order they had been put in was totally different than anything we had seen before. We didn't have the base numbers to connect them up. And so we did try to put Mr. Sylver on to go through the items, but it was very difficult for him. I mean, he did not have we were not prepared to counter that kind of evidence to show that he didn't get this money or to show that all these monies could actually be explained by specific receipts and so forth. And so it was kind of downhill from there. We were thrown totally on the defensive. And everything that went forward after that we feel was very much prejudicial to Mr. Sylver. I'm concerned about what's the line between a percipient witness, a person who's in the investigation, does the investigation because they're skilled, and then comes in and testifies to what they found and what they see, and an expert witness. Where do we draw this line? Well, I would say that a percipient witness could say I observed a particular document or I observed a particular bank account or check, but that's another matter from giving the opinion that this particular individual actually received this money to their benefit. A corporation could have a series of checks and a series of accounts, and I suppose as an auditor, as a percipient witness, she could say that she saw these items. But it's another thing to testify that, in her opinion, they went to Sylver or disbursed to Sylver to imply that these are ill-got gains that he received improperly from the company. Well, what if the evidence just hypothetically were, yes, this check shows on the books here, and it's also marked over here, so we know it was disbursed. And his initials appear over here as having received it. Now, clearly, that would be a percipient witness' bailiwick. It would depend on how the particular item being referred to was designated. There were many in this case, a number of the checks, they didn't produce the second, the back page that showed who endorsed the check. There might only have been a name typed on the check. We don't know who actually got the money when they went to the bank, if it was a petty cash withdrawal or a cash disbursement. There was a lot of testimony at the trial that these people were in the process of building out an empty warehouse structure into a manufacturing facility, and they had paid for a lot of items deliberately in cash because they were very cash short and wanted to get the lowest prices, and that's how you do it. And so there were a lot of petty cash issues in the case. And it's one thing to suggest that here's an item of petty cash that was withdrawn, but I wanted another thing to testify that the European Union was disbursed too silver. That implies that he took the money out of the company. And I would point out that even in the complaint, which was made a part of the stipulation and so forth, does not allege that Silver embezzled any money or stole any money or took any money. Most it says is that he received some form of salary over and above, even though he had stated in the 10-Ks that he was not taking any salary. And so you had this one-day continuance. Yes. And then I presume you had an opportunity to cross-examine Ms. Romero. I did cross-examine her, and as I point out, we did the best I could, but as I point out, the difference between cross-examining an expert and having your own expert to say, well, I've looked at the same documents, Ms. Romero looked at it, and I've looked at all the other corporate documents, and as an expert, I can rely on matters normally relied on by an expert, so I can even rely on some hearsay matters and cash receipts and so forth, and I've looked at it all. And in my opinion, none of this money actually went to Mr. Silver. It all went for valid expenditures of the company. Had we had a witness like that, the trial, I believe, would have had quite a bit different implications and outcome. After you were able to cross-examine Ms. Romero, I presume this was during the SEC's portion of their case? Yes. And there came a point in time when you were allowed to present evidence on behalf of your client, Mr. Silver? That is correct. Okay. And was that the same day, the next day? No. Your Honor, the trial lasted, I believe, about eight or nine days of trial, well over a week. I did call Mr. Silver, but the problem we had is that we had not anticipated an expert stating that he got these funds, and so that forced us then to try to produce an explanation on his part to show that he didn't get them, but we didn't have a lot of the receipts and so forth. We were not in any position to probably authenticate them, you know, if you've got S&J Lumber Company, you know, and so on. How do you get that into evidence? And so we ran into numerous evidentiary problems, and Mr. Silver, the judge would not allow Mr. Silver to refresh his recollection from documents that he had prepared over his constant objections, and the result was that his testimony did not go in well, admittedly, as they pointed out in their reply brief. I mean, he made a lot of mistakes. He got confused, and as I say, the trial kind of went downhill from there. After you cross-examined Ms. Romero, at any time after that or before you started presenting your client's case, did you ask the district court for an additional continuance to find, retain, and prepare an expert witness? I don't – I can't represent that we did do that. I know there was quite a great deal of discussion and argument back and forth and repeated objections, and I did ask four times to the judge right after she first testified that it was unfair that she was testifying as an expert and we didn't have an expert, and no expert had been noticed in the case. They took the position she was only a summary witness. And – but I don't know that after she testified, I again reiterated the objection or request. That may not – may not have been. I'm not asking if you repeated your objection. I've asked after you've said, okay, Your Honor, you gave me a day, and I've used that as best I can to prepare to cross-examine this witness on the substance of testimony I was unprepared for. But now I would like an additional continuance before we start the defense case to find, retain, and prepare an expert witness, and I take it you did not do that. I don't believe I actually stated that, but I do believe I pointed out to the judge when she – during the initial argument that we – it was unfair that we did not have our own expert. But I can't cite that I said exactly that, no, sir. Did you want to save any time for rebuttal? Yes. Okay. Thank you, counsel, for your argument. We'll hear from the SEC at this time. Thank you, Your Honor. May it please the Court, Dominic Freed on behalf of the Securities and Exchange Commission. I'd like to start by showing you the record. If you can go to this supplemental excerpt of record, and in the transcript portion, which is tab 6, on page 447, Mr. Port asks Ms. Romero, the summary witness, and you're not expressing any opinion on that one way or the other, and that's being that Mr. Silva received these funds and that's what she was testifying to, and the answer is no, I am not. If you proceed – What page are you on? That was 447 in tab 6. Mine doesn't have – I've got tab 6, but mine doesn't have Bates Stamp or other numbers on it. Is there a – Oh, it's the transcript number. Yeah. On the top right corner. And it's number – 447. Okay. Now, what line? On the line 25 question, and you're not expressing any opinion on that one way or the other, the answer on the next page is no, I am not. If you proceed to page 450, the question on line 1 is, in the case of checks to cash, did you ever determine in those cases who received that cash? The answer is no, I did not. And down at line 8, wasn't it important to the SEC to know who got that $42,000? They were talking about a specific check. Whose account it went into? The purpose of this schedule is just to schedule out the receipts and disbursements into the account. If you proceed down to line 24, and you're not contending that it went to Mr. Silver, are you? And the answer is no, I am not. Mr. Romero was called to give a – lay the foundation for a summary exhibits. Were the exhibits themselves disclosed prior to trial? The exhibits were given to – yes, yes. They were given to Mr. Port the day before trial. The underlying substance of them was disclosed to Mr. Silver well in advance. The day prior to trial? Yes, the exhibits themselves. They had been produced in a different format previously, and the substance – as I said, the substance of the information was given to Mr. Port during discovery. Everybody knew that these specific transactions were at issue. If you recall, they went through full summary judgment motions on these as well. So the exhibits themselves were given to Mr. Port before trial. Was there a pretrial order of any kind? Was there a pretrial order? I don't recall if there was a – yes, I believe there was a pretrial order. Did it require the parties to exchange the exhibits? They were actually going to use it? I can't – I can't recall what the requirements of the pretrial order were regarding the summary exhibits. When were they prepared in relation to the trial? I'm sorry? When were exhibits 84 and 389 prepared in relation to the date of trial? I believe that they were prepared shortly before trial. There had been versions of this that Ms. Romero was working on during the investigation and then during the preparation for trial, but I believe the final version was done shortly before trial. And how much time elapsed between the completion of preparation and the turnover to Mr. Silver's counsel? I don't know the answer to that question. Okay. But I can assure the Court that, in fact, Mr. Port conceded this at trial, that this substance of the information was given to him during the course of discovery. So there was no surprise about which transactions were at issue. To go back to Mr. Port's argument, I would say that I think there's a confusion here between – and this arises, I think, from a reading of the Hart case. It doesn't mean that you're testifying as an expert if you are testifying regarding laying a foundation for a summary exhibit. The Hart case rested on the idea that you cannot – you need to have the underlying assumptions of a summary exhibit laid by other evidence in the record. The exhibit can't make assertions that are not established elsewhere in the record. It can't be evidence of those assumptions itself. In Hart, the problem there was both that the – was that the record evidence – there was no record evidence except for the expert testimony. In that case, it was expert testimony of the summary witness. Here, however, there were no assumptions made by Ms. Romero. As I read to you, she was stating that she wasn't testifying regarding the ultimate conclusions. She was just laying a foundation for the mathematics done to establish this exhibit. I'm not saying that he actually received this money, but it looks like he paid for it with his own American Express card. Yeah. I mean, when we're talking about – How much sense does that make? Well, the sense is in this. There's other record evidence to establish that Mr. Silver controlled the American Express card, that he made – that he had the cards and he gave them to his family members, and that he was in charge of telling his accountants where to put certain disbursements. The sense in that also comes from the fact that all she's doing is taking these charges and adding them up, and adding them up in certain categories. You don't need expert testimony to do that. You don't need any real expertise. Would you agree that we wouldn't be here discussing at least this portion of the issue if you had disclosed these exhibits well in advance of trial? I don't believe so, Your Honor, because I – Or created them well in advance of trial? Again, I have to disagree. I think the real issue came from the substance of the testimony, and this was an attempt to try to get this exhibit out because it was the only place in the record where the math was done. How long have you been trying cases? How long have I been trying cases? I'm an appellate attorney. I don't – Don't try cases. I don't try the cases. You didn't try this case. I did not try this case. That's why my knowledge of the record is somewhat limited, but I wouldn't say only about certain procedural aspects that I had not anticipated. Well, I guess on the one hand, I had assumed you were the one that tried the case. On the one hand, I shouldn't take you to task for not producing it earlier. But on the other hand, I can tell you, after doing this kind of thing for 25 years, that you learn that you don't have surprises in civil litigation. You give the stuff up. You give it up well in advance. The government would not – the commission would not have been harmed one iota by disclosing this information three or four months prior to trial and telling the other side exactly what use you intended to make of these exhibits. Your Honor, if I could just point you to the record again, I think I may be able to clear this up. You do see that. I do see that, but I don't think that's the case here. I think what we have is just substance over form or form – I'm sorry, form over substance. If you look at the record – I used to try cases in front of this old crusty judge from St. Louis, and he always used to say, Hawkins, no hooks. And that meant I'm not going to give you anything to hang your hat on. So, you know, that's how you avoid that problem. Maybe when you go back and talk to the people who try these cases, you could tell them that. You wouldn't be spending the time on this if you had disclosed it in advance. It would have been a non-issue. I will certainly talk to enforcement and ask them to please give over summary exhibits more in advance. If you could look at exhibit tab 9 to the supplemental record. We're still on the brown one? Yes. Okay. Number 9. These are the cash withdrawals that were part of, I believe, an interrogatory response that we submitted to counsel during the course of discovery. These list the transactions that eventually went into the summary exhibit. If you compare the two, aside from the fact that the second page, as well as Fargo, which is actually incorrect, it was a different bank account as far as I remember. So it's a summary, but it's inaccurate? Well, yes, there were inaccuracies somewhere. Well, you know, discovery is not always perfect. But, you know, then we submitted so that's the substance of what was in these summaries. Would it have been admissible for Mr. Silver, had he had advanced knowledge of the summary exhibits and the testimony surrounding them, would it have been an admissible part of his defense case to put on an expert witness to say, Mr. Silver never got any of these funds? I don't believe so. That would not have been admissible? Because I don't believe that's an expert witness' purview. I believe that's a fact witness. I believe Mr. Silver was the perfect person to stand there and say, I didn't get this money, which he did successfully for over $300,000 of what the SEC was seeking. So the idea that he was prejudiced by this, I think, is hard to believe. We asked for, and if you look at Exhibit 386 or 389, it showed $487,000 in transactions that we flagged. The court only found responsible for 200,000 of those for disgorgement. If you look at Exhibit 84, which is the American Express account exhibit, it showed $138,000 in charges of what I would call questionable. Your theory is that the amounts were so large he must have gotten the money. No, that's not the theory of our case. Then why are you telling us this? I'm telling you this because that's exactly what Mr. Silver did, and that's the proper witness to rebut the summary exhibit, the person who had knowledge of this situation. Dispute the notion that with prior notice, the defense would have been able to retain, hire, and prepare an expert witness to testify about where these funds actually went, that that would have been irrelevant to these proceedings? Is that your position? I believe so, yes. I would answer that yes. I don't begin to put on, if counsel has stood up and said, I have an expert witness ready and prepared to get on the stand, it's a CPA with 35 years of experience, he's traced every penny of these amounts, and he will demonstrate to the court that none of this money ever went to Mr. Silver. Are you telling me the district court would say that's irrelevant? I would say that the expert would have no basis for opining as such. There's no way. That's what trials are about, aren't they? Yes, they are. But there's nothing, again, and not to do. We understand your argument with respect to this case and this record. Well, let me ask a question. I was trying to find it here, but I couldn't immediately. I thought that Silver possessed this information, at least a summary, under Rule, I think it's 1006, before Romero's testimony. That's correct, yes. How much time before? Months before. And then the trial judge, nevertheless, offered Silver's attorney a day continuous to go over this and be prepared, and he turned it down. He absolutely did. He started the cross-examination that day, Your Honor. And so I have trouble seeing that, and I guess this is your argument, that he was prejudiced by any actions of the trial court. He had this information a month before, you say, and this was in the summary of the various exhibits, and that's certainly a proper way to prepare and give the other side the contents or the summaries of hundreds of exhibits. I think every trial lawyer has had that experience. But here he's given extra time, and he turned it down. He did, Your Honor, yes. Okay. And also, if I may add, there is unaware of any case in which the counsel is required to give over the actual summary before trial. The cases that we cite in our brief, and I didn't see Mr. Port come up with anything contrary, state that all you need to have is that the underlying documents themselves have been produced to the other side, and you indicate what the substance of the document would be, and that those documents be admissible. Remember, what we're doing, we're talking about a way to save volume for the trial court. And so this summary exhibit is only really a compilation or a distillation. If you're going to call that distillation for mathematical purposes to get to a total, that would be the court can rule on, and in some instances, if it's a jury, the jury could use to get to a certain number. Okay. I think we understand your argument. Great. Rebuttal. Thank you for coming in today. Thank you. Counsel. Thank you, Your Honor. Now, I could have sworn in your opening argument that you told the panel that you got a day's continuance and used it. Did I miss something? Yeah, that's my recall of the trial, is that I did start cross-examiner on some issues, Romero, on some issues then, but as I recall, the court gave us more time, because I know I distinctly recall going back with my client and trying to make sense out of what they had given us. So I did cross-examiner on general issues then, but I asked for more time, and the judge said, I'll give you more time to prepare to cross-examiner, and he did do that. There was definitely some kind of a continuance of at least like over a weekend or another day. And you were able to get on the record that she was not saying that these funds went to your client. Well, that is not correct. First of all, if I can direct the Court to the appellant's excerpts of record, tab number 6, which was our excerpts from the actual trial testimony, page 423. On direction, it said, Would you please describe what this document is? This schedule summarizes disbursements that went to Michael Silver from Amazon Natural Treasures bank accounts. I'd also like to refer the panel to the Exhibit 389 itself on the last page. At the bottom, it says disbursements to Michael Silver in relation to this total of some $187,000, disbursements to Michael Silver. Now, it is true that as to a few items, the exhibit is quite lengthy, and there were items relating to the Titans, the so-called Titan Investments bank account, which the commission alleged Silver controlled. And as to those items, she says she didn't swear that they went to Silver. And as to a couple of the checks that said nothing on them, they were like blank checks or something, I got her to say she wasn't saying those went to Silver, but the thrust of her testimony was that Silver received the what you see here on page 2312 and 3 of Exhibit 389 was disbursements to Silver. So that is what she testified to. There were a few things I was able to knock out on cross. That's correct, but not everything. Now, on the question of when did we get this information, the complaint alleged a number of things. And the thrust of the complaint was that Silver got some monies, even though he had said he wasn't taking any salary. The commission did give us a list of certain cash items that they regarded as matters of an issue, you know, in response to our request for discovery or interrogatories finally. And we did get that sometime just before the close of discovery or right around the close of discovery. But that was a different exhibit than the one Romero testified from, completely different. The one she testified from was all scrambled. It was in a completely different order. It did not track. We could not make sense out of it. The exhibit that she testified from and that went into evidence that said disbursements to Silver was given to us at most the Friday before trial. So trial started Monday, but it might have been the Friday before. We did not get it months in advance. In discovery, they had disclosed certain cash items that they regarded an issue. But bear in mind, it's one thing to say there's cash here that's not properly accounted for and you're responsible because you're head of the company. Another thing to say that you receive these monies. And when you talk about the ability to cross-examine an expert, as I said before, it's one thing to cross-examine her and challenge her and try to knock out points. And I knocked a few out. But that's not the same as having your own expert to come back and give your side of the story. It takes an expert to beat an expert. Any trial lawyer will tell you that. You can cross-examine all you want to, but you're not going to beat a professional CPA and auditor for the SEC in there when you're not prepared. I'm confused by the record. Pardon me? I'm confused by the record. Your counsel says, A, that you had these summaries at least a month before. What I'm explaining, sir, is that the ‑‑ Did you have the records, these summaries a month before? Not the summary that is Exhibit 389, which was she testified from. We did not have that until the Friday before trial, Your Honor. What we had earlier was a list of various cash transactions that they had indicated was part of the basis of their complaint. But they were in different order. They were not set up the same. And there's substantial discrepancies between that and this exhibit. So we had some advance notice that they were challenging certain cash transactions. We did not have Romero's expert opinion exhibit of the totals of cash disbursed to Michael Silver until the Friday before trial, Your Honor. We did not. And if you had even a partial amount a month before, wouldn't that be incumbent upon you to hire an expert at that point? We did. On your own? It would have been great to have. We had a great deal. We had very little money to fight this. This case was mostly done for nothing. How do you afford to get depo transcripts? They didn't notice an expert, so we were thankful that they didn't, so we didn't notice one. Had they noticed an expert that was going to say, you, Michael Silver, got this money, we would have begged Bart on his field and gone to everybody, all of his friends, and tried to raise the money to bring someone in to counter that. Yes. But we didn't have notice. And then you waived the day continuance. Is that right? I don't think we – as I recall, I had some general questions I wanted to address to Romero, and I thought we might as well get those done since we were there. We asked for more time to study the exhibit, and the judge did give us a day, I think it was a day, to figure out and try to correlate that back to what we understood to be the evidence in the case. But it was a different exhibit. How much did you waive that? I think we took a day, the day. You just didn't take it right away. We didn't take it right away. That's my recall. Okay. Okay. I think we understand your argument. Thank you both counsel. The case just argued will be submitted for decision, and the Court will stand adjourned. All rise.
judges: Lay , B. Fletcher, Hawkins